IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| GENE EDWARD MILLER, JR.,<br>     PLAINTIFF,<br><br>VS.<br><br>CAROLYN W. COLVIN, ACTING<br>COMMISIONER OF SOCIAL SECURITY,<br>     DEFENDANT. | §<br>§<br>§<br>§      CIVIL ACTION NO. 4:13-CV-456-Y<br>§<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I.     STATEMENT OF THE CASE**

Plaintiff Gene Edward Miller, Jr. ("Miller") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). In April 2011, Miller applied for social security benefits, alleging that his disability began on December 14, 2009. (Transcript ("Tr.") 36; *see* Tr. 156–59.) His application was denied initially and on reconsideration, and Miller requested a hearing before an administrative law judge ("ALJ"). (Tr. 36; *see* Tr. 94–95, 108–111.) An ALJ held a hearing on October 2, 2012 and issued a decision on December 13, 2012 that Miller was not disabled. (Tr. 36; *see* Tr. 36–49, 55–93.) On May 3,

1

2013, the Appeals Council denied Miller's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1–5.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.* of the SSA. In addition, numerous regulatory provisions govern disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled and thus entitled to disability benefits, the Court employs a five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. *Id.* § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 197, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof is on the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at

the final step to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairment. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUES

In his brief, Miller presents only one issue to the Court: Whether the ALJ erred in giving proper weight to the medical source statements from Miller's treating physician, Heather Blackburn, M.D. ("Dr. Blackburn").

### IV.   ADMINISTRATIVE RECORD

#### A. Relevant Treatment History[1]

##### 1. Vani Kotha, M.D. ("Dr. Kotha"), a Treating Physician

Miller began seeing Dr. Kotha in August 2008 to monitor his diabetes. (Tr. 489.) Dr. Kotha's treatment records dated May 2010 show that Miller reported that he was "more physically active than before" and that he was compliant with his insulin. (Tr. 671.) Dr. Kotha

---

[1] The Court will only review the treatment history that is directly relevant to the issue before the Court.

found that while Miller's diabetes was uncontrolled, his A1c test levels were slightly better than on his last visit. (Tr. 674.) Dr. Kotha's treatment records from a July 28, 2011 follow-up show that Miller again reported to be more physically active than before and was compliant with his insulin. (Tr. 678.) Dr. Kotha found that Miller's diabetes was still uncontrolled, but that his A1c levels were again slightly better than before. (Tr. 680.)

The ALJ, in her decision, noted that on December 8, 2011, Miller went to see Dr. Kotha with complaints of back pain and numbness and tingling bilaterally in the lower extremities. (Tr. 45; *see* Tr. 697–721.) Dr. Kotha's examination did not reveal any significant complications caused by Miller's diabetes but noted that Miller's blood glucose levels were poorly controlled. (Tr. 45.)

### 2. Scott Pavey, M.D. ("Dr. Pavey"), a Treating Physician

On January 24, 2011, Dr. Pavey saw Miller for complaints of lower back pain and to discuss medications. (Tr. 373.) Dr. Pavey's records show that Miller had not had an x-ray of his lumbar spine taken since 2005, but that a new x-ray could not be taken due to lack of insurance. (Tr. 373.) After assessing Miller's chronic back pain, Dr. Pavey noted that he would treat Miller "with muscle relaxers and etodolac," but that Miller may need to see a specialist. (Tr. 374.) The ALJ, in her decision, noted that Dr. Pavey's treatment notes showed that Miller's blood pressure and cholesterol were uncontrolled, his response to medications was being monitored, and there were no significant symptoms or complications caused by Miller's impairments. (Tr. 43; *see* Tr. 371–77.)

In July 2011, Dr. Pavey examined Miller and found that: (1) his cholesterol still needed to be better controlled; (2) his thyroid level was still very low; and (3) he was vitamin D deficient. (Tr. 693.) Dr. Pavey saw Miller again on November 21, 2011 for a follow-up of his

complaints of back and shoulder pain. (Tr. 694.) Miller reported that he had been seeing Dr. Blackburn for his back pain but that the medication was not helping with the pain and he wanted to try a stronger pain medication. (Tr. 694.) Dr. Pavey prescribed cyclobenzaprine for the back spasms and tramadol for the pain and noted that if they failed to help he would refer Miller to the Spine Team for pain management. (Tr. 695.)

### 3. Mahmood Panjwani, M.D. ("Dr. Panjwani"), an Examining Physician

The ALJ stated that on June 23, 2011 Miller saw Dr. Panjwani for a physical evaluation with complaints of chronic lower back pain, left shoulder pain and limitations, and history of brain injury with residual symptoms. (Tr. 44, 603; *see* Tr. 602–612.) Dr. Panjwani found that Miller had: (1) motor strength of 5/5 in all muscle groups and in handgrip; (2) normal fine finger movements; (3) normal manipulative ability; (4) the ability to bend and squat with some discomfort due to pain; (5) the ability to stand on toes and heels but with difficulty balancing; (6) crepitus in both knees without any acute findings; and (7) decreased range of motion in left shoulder. (Tr. 44, 606.) However, the ALJ noted that x-rays of the lumbar spine and left shoulder were negative. (Tr. 44, 608, 610.) Additionally, the ALJ noted that Dr. Panjwani indicated that Miller's diabetes, high cholesterol, hypertension, and hypothyroidism appeared to be controlled. (Tr. 44, 607.)

### 4. State Agency Medical Consultant ("SAMC")

The ALJ further noted that on June 29, 2011, SAMC Kavitha Reddy, M.D. ("SAMC Reddy"), reviewed the objective medical evidence in the record and completed a Physical Residual Functional Capacity Assessment ("PRFCA"). (Tr. 44; *see* Tr. 613–620.) In the PRFCA, SAMC Reddy opined that Miller could: (1) lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently; (2) sit, stand, and/or walk for a total of six hours in

an eight-hour workday; and (3) perform unlimited pushing and/or pulling, including operation of hand and/or foot controls. (Tr. 44, 614–16.) SAMC Reddy also opined that Miller was limited in reaching in all directions, including overhead, and concluded that Miller's alleged limitations were not wholly supported by the record. (Tr. 44, 616–18.)

### 5.  Dr. Blackburn, a Treating Physician

The ALJ further noted that on July 27, 2011, Miller was examined by Dr. Blackburn, his treating physician, for complaints of lumbar spine pain and left shoulder pain. (Tr. 44; *see* Tr. 622–23.[2]) The examination revealed that Miller had full strength in his bilateral lower extremities but had pain with flexion and extension of the lumbar spine. (Tr. 44, 621–24.) Dr. Blackburn also found that Miller had full strength in his bilateral upper extremities, but he had pain with range of motion in his left shoulder. (Tr. 44, 623.) Dr. Blackburn reviewed an x-ray of Miller's lumbar spine but was unable to detect if he had any significant disc degeneration. (Tr. 623.) Dr. Blackburn further stated that an x-ray of Miller's shoulder did not show any gross abnormal findings. (Tr. 623.) Dr. Blackburn diagnosed Miller with: (1) chronic low back pain; (2) chronic left shoulder pain; and (3) disturbed skin sensation on bilateral feet and left hand. (Tr. 624.) Dr. Blackburn recommended taking an MRI of the lumbar spine, but Miller could not afford one at that time. (Tr. 624.)

The ALJ also noted that on August 9, 2011, Miller returned to Dr. Blackburn after having an MRI taken. (Tr. 44; *see* Tr. 733.) After reviewing the MRI in conjunction with the official report, Dr. Blackburn found that Miller had: (1) lumbar spondylosis at L3-L4 and L4-L5 and to a lesser degree at L5-S1; (2) a mild disc bulge at L3-L4 and L4-L5; (3) no significant neural impingement; and (4) foraminal narrowing at L4-L5 bilaterally. (Tr. 44, 733.) Dr. Blackburn's

---

[2] While the ALJ did not specifically mention Dr. Blackburn by name in this section of her analysis, a review of the treatment notes referred to by the ALJ indicates that Dr. Blackburn made the treatment notes.

recommendations were for Miller to continue activities as tolerated and follow-up as needed. (Tr. 733.)

According to the ALJ, Dr. Blackburn submitted a medical source statement on June 29, 2012 in which she diagnosed Miller with: (1) chronic lower back pain; (2) lumbar spondylosis; (3) lumbar disc degeneration; and (4) chronic left shoulder pain. (Tr. 45; *see* Tr. 727-31.) Dr. Blackburn opined that, due to chronic lower back pain and chronic left shoulder pain, Miller: (1) could not lift more than five pounds repeatedly; (2) could not sit or stand for prolonged periods; (3) would have difficulty with prolonged standing, walking, and reaching. (Tr. 45, 729.) Dr. Blackburn further recommended that Miller would need a functional capacity evaluation in order to establish actual time limitations on his ability to sit, stand, walk, or lift. (Tr. 45, 729.)

The ALJ also noted that, on September 26, 2012, Dr. Blackburn submitted a second medical source statement. (Tr. 45; *see* Tr. 743–45.) Relying on a lumbar spine MRI, Dr. Blackburn opined that Miller: (1) could not sit for more than three hours at a time; (2) could not stand and/or walk for more than four hours at a time; (3) could not lift more than ten pounds continuously or more than 20 pounds occasionally; (4) would need occasional rest periods; and (5) would occasionally miss two to three days of work per month due to pain and discomfort. (Tr. 45, 744-45.)

### B. ALJ Decision

In her December 13, 2012 decision, the ALJ found that Miller met the disability insured status requirements of the SSA through March 31, 2014. (Tr. 38.) At the first step of the five-step analysis, the ALJ found that Miller had not engaged in any substantial gainful activity since December 14, 2009, the alleged onset date for his disability. (*Id.*) At the second step, she found that Miller had the following "severe" impairments: obesity, type II diabetes, hypertension,


hyperlipidemia, sleep apnea, lumbar degenerative disc disease, left shoulder arthralgias, history of traumatic brain injury with cognitive and personality changes, major depressive disorder, bipolar disorder, and anxiety disorder. (*Id.*) The ALJ also found that Miller had the non-severe impairments of thyroid disorder, history of kidney stones, and tremors. (Tr. 39.)

At the third step, the ALJ found that Miller did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment in the Listing. (Tr. 39–41.) As to Miller's residual functional capacity ("RFC"), the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work[3] as defined in 20 CFR 404.1567(b) with the following limitations: he cannot perform climbing or balancing, but he can occasionally stoop, kneel, crouch, and crawl; he is also limited to frequent reaching with the left upper extremity, but only occasional overhead reaching with that extremity; he can perform frequent handling with the left hand; he should avoid environments with excessive noise, unprotected heights or hazardous machinery; the claimant is also capable of performing simple and detailed tasks, but no complex tasks; and he cannot perform work that requires him to work within a team; and he cannot tolerate over the shoulder supervision.

(Tr. 41 (emphasis omitted) (footnote added).) At the fourth step, the ALJ found that, based on the RFC assessment, Miller was able to perform his past relevant work as a general office clerk, procurement clerk or insurance benefits clerk. (Tr. 47.) At the fifth step, and as an alternative basis for her decision, the ALJ found that Miller had acquired work skills from past relevant work that were transferable to other occupations with jobs that Miller could perform and that

---

[3] Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

existed in significant numbers in the national economy. (Tr. 47–49.) Accordingly, the ALJ concluded that Miller was not disabled. (Tr. 49.)

## V.   DISCUSSION

In his brief, Miller claims that the ALJ improperly rejected the two medical source opinions of Dr. Blackburn, his treating physician, which included limitations directly contradicting the ALJ's findings. (Pl.'s Br. at 10–11.) Miller states that the ALJ erred by rejecting Dr. Blackburn's opinions without performing the required analysis or showing good cause. (Pl.'s Br. at 10.) He argues that because the ALJ did not properly consider Blackburn's opinion, the RFC does not reflect the severity of Miller's limitations. (Pl.'s Br. at 15.) Miller further asserts that if the ALJ had included some of the limitations as assessed by Dr. Blackburn, then the vocational expert could have found that Miller was unable to perform competitive employment. (Pl.'s Br. at 15.)

Controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are

not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the statutory analysis of 20 C.F.R. § 404.1527, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c); SSR 96-6p, 1996 WL 374180, at *3 (S.S.A., July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(c) only if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. *See Newton*, 209 F.3d at 455–57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than the another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is

limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

In this case, as stated above, the ALJ found that Miller had the RFC to perform light work with multiple limitations. (Tr. 41.) In making this determination, the ALJ considered the medical evidence set forth above. As to the opinion evidence, the ALJ, *inter alia*, stated:

> I gave limited weight to Dr. Reddy's assessment. While I agree with the State medical consultant's conclusion of light work, I find that the evidence indicates the claimant is more restricted than determined by the doctor.
>
> . . . .
>
> The claimant's treating physician, Dr. Heather Blackburn, MD, submitted a medical source statement on June 29, 2012. According to Dr. Blackburn, because of his chronic lower back pain and chronic left shoulder pain, the claimant cannot lift more than 5 pounds repeatedly, or sit or stand for prolonged periods. The doctor further reported that the claimant would have difficulty with prolonged standing, walking, and reaching as well. (Exhibit 22F) However, the doctor also indicated that the claimant would need a functional capacity evaluation to establish his actual limitations.
>
> Dr. Blackburn submitted another medical source statement on September 26, 2012, which indicates the claimant cannot sit for more than 3 hours or stand and/or walk for greater than 4 hours at a time. The treating doctor stated that the claimant is unable to continuously lift more than 10 pounds or occasionally lift more than 20 pounds. The doctor's statement also indicates the claimant will need occasional rest periods and will occasionally miss 2 to 3 days of work per month because of his pain and discomfort. (Exhibit 25F) Although I considered the treating physician's opinions in 22F and 25F, I gave her statements little weight, as they are not consistent with or supported by the claimant's longitudinal treatment record and his own report of activities.
>
> . . . .
>
> . . . . Furthermore, I noted that all objective evidence contained in the record was considered, even if not specifically mentioned in this decision.
>
> . . . .

> As for the opinion evidence, I have considered the information and observations provided by the treating and examining physicians in accordance with the requirements of 20 CFR 404.1527; SSRs 96-2p, 96-5p, and 96-6p. After considering all the claimant's alleged symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence, I find there is no opinion evidence provided in the record, which supports the level of severity alleged by the claimant.

(Tr. 44–46.)

The first issue is whether the ALJ was required to address the statutory factors listed in 20 C.F.R. § 404.1527(c) before rejecting Dr. Blackburn's opinions. As discussed above, the ALJ is not required to perform the detailed analysis where there is other reliable medical evidence from a treating or examining physician that controverts the treating specialist's opinion. In this case, the ALJ specifically analyzed and relied on the following medical evidence in rejecting Dr. Blackburn's opinions that Miller was not capable of performing the full range of light work: (1) the records of Dr. Panjwani, an *examining* physician; (2) the opinion of SAMC Reddy contained in the June 29, 2011 PRFCA; (3) the records of Dr. Kotha, a *treating* physician; (4) the treatment notes of Dr. Pavey, a *treating* physician; and (5) the actual treatment records of Dr. Blackburn.[4]

Contrary to Miller's contentions, this is not a case where the ALJ summarily rejected the opinions of the treating physician based solely on the testimony of a non-examining physician. *See Newton*, 209 F.3d at 458. Rather, this is a case where there is first-hand contradictory medical evidence from both examining and treating physicians as the record contains various examination and treatment records from Drs. Panjwani, Pavey, and Kotha. Accordingly, the ALJ

---

[4] As to the physical evaluation performed by Dr. Panjwani, the record shows that he did not find any major problems with Miller's capabilities or conditions. (Tr. 44, 602–12.) Dr. Pavey noted that Miller did not have any significant symptoms or complications caused by his impairments. As to the opinions of SAMC Reddy, it was based on a review of the full record, which includes first-hand medical records from Dr. Panjwani, Dr. Pavey, Dr. Kotha, and Dr. Blackburn. (Tr. 44, 613–20.) Finally, Dr. Blackburn's assessments of Miller's symptoms were found by the ALJ to lack consistent, objective medical evidence to support her final opinions. (Tr. 45, 727–31, 743–45.)

was not required to perform a detailed analysis under 20 C.F.R. § 404.1527(c) in this case.[5] Because the ALJ found that the evidence and opinions in the record were inconsistent, he was required to weigh all of the evidence together in making a determination of disability. *Id.* § 404.1527(c)(2). The ALJ fully considered the evidence in the record as a whole, which included the opinions of Dr. Blackburn and first-hand medical evidence from other examining and treating physicians, in making her disability determination. (Tr. 45.) *See, e.g., Magee v. Astrue*, No.1:09-CV-620-HSO-JMR, 2011 WL 1226011, at *6–7, (S.D. Miss. Mar. 29, 2011). Thus, the ALJ did not err in failing to perform the detailed analysis, as it was not required.

The second issue is whether the ALJ sufficiently demonstrated good cause for rejecting the treating physician's opinion. Miller contends that the ALJ's reasons for rejecting Dr. Blackburn's opinions were not supported by substantial evidence. (Pl.'s Br. at 12.) Miller claims that the ALJ improperly relied on Miller's reported daily activities when weighing the evidence and that she provided an inadequate explanation for rejecting Dr. Blackburn's opinions. (Pl.'s Br. at 12.)

---

[5] Even assuming that the ALJ was required to address the statutory factors listed in 20 C.F.R. § 404.1527(c) before rejecting Dr. Blackburn's opinions, the Court concludes that the ALJ, at least implicitly, performed such analysis. As to factors one and two under which the ALJ evaluates the examining and treatment relationship between Miller and Dr. Blackburn, the ALJ clearly recognized that Dr. Blackburn was Miller's treating physician and specifically discussed the several times Dr. Blackman examined Miller as well as the two medical source statements submitted by Dr. Blackburn. (Tr. 45.) In addition, the ALJ obviously was aware of the length and extent of Dr. Blackburn's treatment of Miller as he specifically stated "all objective evidence contained in the record was considered, even if not specifically mentioned in this decision." (Tr. 46.) *See,* 20 C.F.R. § 404.1527(c)(1). As to factors three, four, and six under which the ALJ evaluates the supportability and consistency of the physician's opinion, as well as any other factors that "tend to support or contradict the opinion," the ALJ, after reviewing the other evidence in the record, noted that Dr. Blackburn's medical source statements were not consistent with or supported by Miller's longitudinal treatment record and his own report of activities. (Tr. 45.) *See* 20 C.F.R. §§ 404.1527(c)(3), (4), (6)c)(3), (4), (6). As to factor five, more weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). Factor five does not apply here because neither the record, nor either party's brief, indicates Dr. Blackburn is a specialist of any sort. Thus, her opinion is entitled to no additional weight under this factor. Because the ALJ properly considered the treatment records and opinions of Dr. Blackburn and went through the factors listed in 20 C.F.R. § 404.1527(c) before rejecting Dr. Blackburn's opinions, the Court concludes that the ALJ did not err.

As to Miller's daily activities, the ALJ stated:

> The claimant also testified that he has difficulty using his left arm because of chronic pain symptoms. The evidence shows that the claimant has some restricted range of motion because of pain. However, the record does not indicate that the claimant's use of the left upper extremity is as limited as alleged. In fact, the consultative examiner noted that x-rays of the claimant's shoulder were negative and showed no evidence of abnormality. Although the State DDS medical consultant did not find that the claimant had limitations with the upper extremity, I have limited the claimant to frequent reaching and occasional overhead reaching with the left upper extremity.
>
> The claimant further alleged that he is impaired by symptoms associated with type II diabetes, hypertension, and high cholesterol. I found that the evidence does not reveal any significant symptoms or limitations caused by the impairments. The treatment notes indicate the conditions are being treated with medication, and with consistent monitoring and treatment, the impairments should eventually stabilize. The claimant also suffers from sleep apnea and the complicating factor of obesity, but the record also does not reveal any significant symptoms caused by the conditions. The notes also reveal the claimant uses a C-PAP machine, which has helped relieve his symptoms. Accordingly, I have provided the appropriate environmental limitations.
>
> I also find that the claimant has described daily activities, which are not limited to the extent one would expect, given his complaints of disabling symptoms and limitations. The claimant testified during the hearing that he is able to prepare meals, wash dishes, do laundry, sweep and mop, and take care of his personal care needs. The claimant even stated that he mows the yard. While I appreciate that the claimant need not be bedridden before he can be determined to be disabled, his daily activities can nonetheless be seen as inconsistent with his allegations of disability.
>
> I find that the description of the symptoms and limitations reported by the claimant is generally inconsistent with the record as a whole and therefore unpersuasive. In making this finding, I have considered all the alleged symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929; SSRs 96-4p and 96-7p. Furthermore, I note that all objective evidence contained in the record was considered, even if not specifically mentioned in this decision.

(Tr. 45–46; *see* Tr. 64–72.)

In giving little weight to Dr. Blackburn's opinions, the ALJ relied on Miller's testimony of his actual abilities, as evidenced by his report of daily activities, as well as the objective

medical evidence in the record. (Tr. 45–46.) The ALJ specifically noted that Dr. Blackburn's opinions were not supported by Miller's "longitudinal treatment history and his own report of activities." (Tr. 45.) The record includes treatment records indicating that Miller reported normal or even improved daily activities, as well as Dr. Blackburn's conclusion that Miller should include such activities "as tolerated." (Tr. 733; *see* Tr. 671, 678.) Miller's treatment records over time do not support a conclusion that Miller's limitations are greater than those listed in the RFC. Because the ALJ properly considered the opinions of Dr. Blackburn and provided good cause for rejecting her opinions, the Court concludes that the ALJ did not err. Consequently, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal

conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

### ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **June 10, 2014**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED May 27, 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE